*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* YOUNGBLOOD-AUSTIN/YOUNGBLOOD,
Minors.

UNPUBLISHED
August 17, 2023

No. 365221
Saginaw Circuit Court
Family Division
LC No. 21-049798-NA

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children under MCL 712A.19b(3)(c)(*i*) and (g). We affirm.

## I. FACTS

Petitioner, the Department of Health and Human Services (DHHS), found on two consecutive days that respondent had left her seven children, whose ages ranged from approximately 10 months to eight years, without supervision in an extremely dirty, cluttered, and hazardous home. In light of the history of child protective services intervention with the family, petitioner requested that the trial court remove the children from respondent's care and custody. The trial court authorized the petition, and the children were removed from respondent's care in July 2021. A preliminary hearing was held July 12, 2021. Respondent was in jail at that time on charges of child abuse;[1] the trial court granted her supervised parenting time upon her release.

At the adjudication hearing held September 1, 2021, the trial court assumed jurisdiction of the children after respondent admitted that she had left the children unsupervised. Respondent was no longer incarcerated but reported being homeless and unable to care for the children. The trial court ordered that respondent continue to have supervised parenting time and that petitioner make reasonable efforts toward reunification of respondent and the children. Petitioner thereafter created a case service plan, which the trial court adopted, ordering respondent to obtain and

---

[1] The children's father also was incarcerated at that time. His parental rights to the children later were terminated by the trial court and he is not a party to this appeal.

-1-

maintain suitable housing, complete a psychological evaluation, comply with drug screening, regularly attend parenting time with the children, and participate in and benefit from parenting education, individual therapy, and psychiatric services.

Respondent thereafter failed to participate in most of the services offered by petitioner to assist her in regaining custody of the children, and failed to benefit from the services in which she participated. Respondent resisted participating in drug testing or substance abuse evaluation, and admitted that she used marijuana daily. Respondent participated in a psychological evaluation, but refused to participate in most of the mental health services offered. Although respondent completed a parenting education program, she was referred to additional sessions because she had not benefitted from the program. Respondent completed the additional parenting education, but still showed no benefit. Respondent refused to participate in a money management program. In addition, respondent's driver's license was suspended and she continued to drive without a valid license and without automobile insurance, despite petitioner directing her not to drive while her license was suspended.

Respondent attended parenting time, but generally did not engage with the children and heavily relied on the older children to care for the younger ones. Petitioner split the children into smaller groups to make the visits more manageable, but respondent did not fare any better. At one point, respondent declared that she needed a break from parenting time. Respondent often arrived for parenting time smelling strongly of marijuana and sometimes appeared under the influence of marijuana. Respondent's parenting time was suspended in August 2022 due to the children's poor behavior before and after their visits with respondent. After parenting time was suspended, the children's caretakers reported that the children's behavior improved.

Respondent suffered a medical episode, possibly a stroke, in November 2022 and was in an induced coma for several days. At the time of the termination hearing, respondent was still hospitalized and was paralyzed on her left side and had difficulty speaking; she was going to have to relearn to walk, speak, and care for herself. Respondent was unable to participate in services due to her medical condition.

In December 2022, petitioner filed a supplemental petition requesting that the trial court terminate respondent's parental rights to the children under MCL 712A.19b(3)(a)(*ii*) (parent has deserted the child for 91 or more days and has not sought custody during that period), (c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). The trial court appointed a guardian ad litem (GAL) for respondent, and the GAL was present at the termination hearing to represent respondent's interests.

At the termination hearing, respondent's caseworker testified that petitioner had provided numerous services to respondent but respondent failed to participate in the offered services. Respondent repeatedly refused to engage in mental health services, and stated that she had no interest in participating in counseling because she believed that it was "pointless," and she "didn't want to tell her business to everyone." Respondent began attending counseling in July 2022, but attended less frequently than recommended. Respondent also refused to take her prescribed psychiatric medication. Although respondent had completed parenting education, she showed no improvement in her ability to parent the children; the program evaluator reported that respondent

lacked a basic understanding of the growth and development of children and posed a high risk of abuse and neglect. During parenting time, respondent frequently yelled at the older children, placed her phone in front of the younger children to keep them occupied, and continued to rely on the older children to parent the younger ones; DHHS workers frequently had to intervene to keep the children safe.

The caseworker further testified that respondent received monthly Social Security income as well as a monthly stipend to cover her housing expenses. Respondent refused, however, to spend any of her income on meals or other necessities for the children; she told caseworkers that she needed her income for herself and that the children's foster parents received funds to provide for her children. Respondent also refused to participate in money management services to learn how to budget her income to provide for the children. Respondent had obtained an adequate home with the housing stipend she was provided, but the children could not move into the home because respondent had not yet obtained necessary items, such as beds. Respondent began a relationship with a man who had a criminal record; petitioner determined the he would not be a suitable caregiver for the children.

The caseworker and the children's court-appointed special advocates (CASAs) testified that the children did not have a healthy, appropriate bond with respondent. The caseworker testified that the children had been in 28 different placements throughout the case. Although the children had stabilized after respondent's parenting time was suspended, they were in desperate need of stability and permanency given their young ages. One CASA worker testified that respondent had shown that she could not safely parent all seven children, that the children expressed that they did not wish to be returned to respondent, that the children had bonded with their foster parents, and that the children were doing well in their placements.

The trial court referee issued findings of fact and conclusions of law recommending that the trial court terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (g) because petitioner had established those statutory grounds by clear and convincing evidence and termination was in the children's best interests. The referee found respondent still required services to address her parenting skills, mental health, housing and finances, but had not had the ability to participate in services since November 2022, and was unlikely to have the ability to participate in services for an extended time in light of her medical condition. The referee also found that several of the children had no bond with respondent, and the other children had only a friendship with respondent rather than a parent-child relationship. The trial court further found that the children had been in 28 placements during the 16 months that the case was pending before the trial court and that the children needed stability. The trial court adopted the referee's findings and conclusions and terminated respondent's parental rights in February 2023. This appeal followed.

## II. DISCUSSION

## A. STATUTORY BASIS

Respondent argues that the trial court clearly erred by finding that clear and convincing evidence supported termination of her parental rights to the children under MCL 712A.19b(3)(c)(*i*) and (g). We disagree.

To terminate parental rights, the trial court must find that at least one statutory basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). Termination may be warranted under more than one statutory basis, but only one basis under MCL 712A.19b(3) must be established by clear and convincing evidence to warrant termination of parental rights. *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). In this case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (g). That statute provides, in relevant part:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [MCL 712A.19b(3)(c)(*i*) and (g).]

We review for clear error the trial court's factual findings and the trial court's determination that a statutory basis to terminate parental rights was proven by clear and convincing evidence. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). The decision to terminate parental rights is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). We afford the trial court's dispositional orders "considerable deference on appellate review." *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014). A trial court's decision is not clearly erroneous unless it is more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

Termination of parental rights under MCL 712A.19b(3)(c)(*i*) is warranted when "the totality of the evidence amply supports" the finding that the parent has not achieved "any meaningful change in the conditions" that led to the trial court assuming jurisdiction of the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). In this case, the record supports the trial court's finding under MCL 712A.19b(3)(c)(*i*) that more than 182 days had elapsed after the issuance of the first dispositional order, the conditions that led to the adjudication continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages.

Here, the conditions that led to adjudication were respondent's substance use, mental instability, housing instability, and lack of parenting skills. The children were removed from respondent's care after she repeatedly left them unsupervised in inadequate and unsafe housing. She was offered numerous services to enable her to reunite with the children, but failed to participate in and benefit from most of the services. Respondent did not participate in drug screening, and admitted to daily marijuana use. She refused to participate in counseling until shortly before the termination hearing and stopped taking her prescribed psychiatric medication. She obtained housing with her housing stipend, but had not repaired or furnished the house to make it appropriate for the children. Respondent completed a parenting education program, but she did not benefit from the program. She participated in parenting time with the children, but did not engage with the children, did not properly supervise the children, and failed to establish or maintain a bond with the children.

At the time of the termination hearing, respondent had not improved her parenting skills or her bond with the children, and had not demonstrated that she could maintain housing suitable for the children. Respondent also had the additional barrier that she was hospitalized and partially paralyzed and it was uncertain whether or when she would recover sufficiently to care for the children. We conclude that the record supports the trial court's finding under MCL 712A.19b(3)(c)(*i*) that the conditions that led to the adjudication continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages.

For the same reasons, the trial court also did not err by determining that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(g). Termination under subsection (3)(g) is warranted if clear and convincing evidence demonstrates that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Respondent's caseworker testified that respondent received approximately $959 per month in Social Security income, $1,366 per month from a housing voucher, and approximately $20 per month in food assistance, which would increase significantly if the children were returned to her care. Despite having the financial ability to contribute food or other items for the children, respondent refused to do so.

In addition, the record supports the trial court's finding that there was no reasonable expectation that respondent would have been able to provide proper care and custody within a reasonable time considering the children's ages. Until shortly before her hospitalization, respondent refused to participate in mental health or psychiatric services and she showed no benefit from the parenting education that she had completed. A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide proper care and custody in the future. *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018). The trial court did not clearly err by finding that respondent had failed to provide the children with proper care and custody despite having the financial ability to do so and that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the children's ages.

## B. BEST INTERESTS

Respondent contends that the trial court clearly erred by finding that termination of her parental rights was in the children's best interests. We disagree.

When a statutory basis for termination of parental rights has been established, the trial court is required to terminate the parent's parental rights if a preponderance of the evidence demonstrates that termination is in the child's best interests. MCL 712A.19b(5); *In re Medina*, 317 Mich App 219, 236-237; 894 NW2d 653 (2016). When determining whether termination is in a child's best interests, the trial court should weigh all evidence available to it, considering a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the length of time the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. See *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015). The trial court also should consider the child's safety and well-being, including the risk of harm to the child if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). We review for clear error the trial court's decision regarding a child's best interests. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022).

Respondent argues that she obtained a house and completed parenting education services as directed by the case service plan. However, the caseworker testified that the house that respondent obtained required repairs and respondent had not yet acquired beds or other necessary furnishings for the children. Respondent had shown no benefit from the parenting education that she had completed, and respondent refused to participate in mental health services and money management assistance. The caseworker testified that the children lacked a parent-child bond with respondent and that any existing bond had significantly diminished over time. The caseworker testified that respondent put her own needs above the needs of the children, and she refused to use her income to assist in the support of the children. Respondent showed no improvement in her ability to adequately parent the children at parenting time. In addition, respondent's medical condition greatly extended the time needed for respondent to take the steps necessary to be able to parent the children.

In the 16 months that the children had been in care, the seven children had been in 28 different placements. The children's trauma assessments indicated that the children had been through a significant amount of trauma; four of the children had been diagnosed with post-traumatic stress disorder (PTSD). The children's behavior had improved after respondent's parenting time had been suspended. The caseworker testified that the children needed stability and permanency, and a CASA worker testified that the children had bonded with their foster parents and were doing well in their placements. The caseworker testified that respondent would be unable to care for the children if they were returned home at the time of the termination hearing due to her inadequate parenting skills. Given respondent's issues with her mental health, physical health, substance use, lack of parenting skills, and lack of bond with the children, and the children's young ages and need for permanency, stability, and finality, the trial court did not clearly err by finding that it was in the children's best interests to terminate respondent's parental rights.

-6-

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent contends that she was denied the effective assistance of counsel because her attorney failed to request an adjournment of the termination hearing in light of her medical condition to permit her to attend the hearing. We disagree.

In a child protective proceeding, a parent is entitled to the effective assistance of counsel. *In re Londowski*, 340 Mich App 495, 506; 986 NW2d 659 (2022). When analyzing a claim of ineffective assistance of counsel in the context of a child protective proceeding, we apply by analogy the principles applicable to claims of ineffective assistance of counsel developed in the criminal law context. *In re Mota*, 334 Mich App 300, 318; 964 NW2d 881 (2020). Claims of ineffective assistance of counsel present mixed questions of fact and law. *Id*. Factual findings are reviewed for clear error, while questions of law are reviewed de novo. *Id*. Findings of fact are "clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).

To establish ineffective assistance of counsel, a respondent must show that (1) counsel's performance fell below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent, meaning that there is a reasonable probability that, but for counsel's deficient performance, there would have been a different outcome. *People v Jurewicz*, 506 Mich 914, 915 (2020), citing *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); see also *In re Mota*, 334 Mich App at 318-319. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. at 319.

This Court presumes counsel was effective, and a respondent making a claim of ineffective assistance carries a heavy burden to overcome this presumption. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Counsel is not ineffective for failing to advocate a futile or meritless position. *Id*. Additionally, trial counsel can reasonably decline to object to procedures, evidence, or arguments as a matter of trial strategy. See *People v Unger*, 278 Mich App 210, 242, 253; 749 NW2d 272 (2008). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted).

In this case, respondent argues that her trial attorney was ineffective because she did not move to adjourn the termination hearing to enable respondent to attend at a later date. A review of the record in this case does not support respondent's assertion that her counsel at trial was ineffective for failing to move for an adjournment.

When it was determined that respondent had suffered a medical episode, possibly a stroke, in November 2022, and was unable to make decisions on her own behalf, the trial court appointed a GAL for respondent. Both respondent's counsel and her GAL were present at the termination hearing, and the trial court made clear at the beginning of the hearing that, based on its discussions with the parties off the record regarding respondent's inability to participate, the hearing would continue without her. Respondent's counsel informed the trial court that she could adequately represent respondent's interests in the case, despite respondent's inability to appear or participate, because she was aware of respondent's opinions regarding termination before respondent's stroke.

Respondent's counsel could have reasonably concluded that requesting an adjournment would have been futile or meritless in light of the trial court's determination that the hearing would proceed. See *Head*, 323 Mich App at 539. The record makes clear that respondent was severely incapacitated and that her convalescence was uncertain and anticipated to be of long duration. Given the record evidence, respondent's counsel may reasonably have concluded that requesting an adjournment would have been meritless; indeed, it was uncertain whether respondent would ever recover sufficiently to participate in the hearing. Counsel therefore was not ineffective for failing to make a futile motion.

Moreover, respondent has not demonstrated that she was prejudiced by her trial attorney's decision not to seek an adjournment. As discussed, a respondent has been prejudiced if there is a reasonable probability that, but for counsel's deficient performance, there would have been a different outcome. *Jurewicz*, 506 Mich 914 (2020). A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *In re Mota*, 334 Mich App at 319. Here, there is no evidence that a postponement of the hearing would have affected the outcome. The record suggests that it would have been at least many months before respondent would have been able to attend a hearing and many more months, if ever, before she could expect to participate in services. Even if it were assured that many months or years in the future she would be physically able to parent the children, respondent had not demonstrated in the 16 months preceding the hearing that she had any inclination to become more able to parent the children by fully participating in services. It was therefore incumbent upon the trial court to timely proceed with the termination hearing given the needs of the children for permanency. We hold that respondent's trial counsel's decision not to seek adjournment of the termination hearing did not result in prejudice to respondent, and thus was not ineffective representation.[2]

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[2] Respondent also asserts on appeal that DHHS did not make reasonable efforts toward reunification. However, respondent merely makes conclusory statements to support her assertions. "An appellant may not merely announce [her] position and leave it to this Court to discover and rationalize the basis for [her] claims . . . ." *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020) (quotation marks and citation omitted). Because respondent has failed to adequately brief the issue, she has abandoned it on appeal, and we refuse to address it. See *id*. ("An appellant's failure to properly address the merits of [her] assertion of error constitutes abandonment of the issue.") (quotation marks and citation omitted).